## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO NUNEZ, JR., | : | Civil No. 1:23-CV-01171 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. LAUREL R. HARRY, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court is Plaintiff's motion to partially dismiss the second

amended complaint. (Doc. 35.) The court will grant the motion in part and allow

Plaintiff's claims regarding scented oils, privacy screens, and strip searches against

Defendant Wenerowicz and the claims regarding the Eid feasts against Defendants

Harry and Klemm to proceed to discovery. The remaining claims will be

dismissed either with or without prejudice, as explained in this memorandum.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint and a motion to proceed *in*

*forma pauperis* in July of 2023. (Docs. 1, 3.) On August 16, 2024, the court

granted Plaintiff *in forma pauperis* status and ordered the complaint to be served

on the named defendants. (Doc. 12.) Defendants filed a motion to dismiss on

November 30, 2023. (Doc. 19.) On February 20, 2024, Plaintiff filed an amended

complaint, and the court promptly struck it from the record due to it being filed

without leave of the court.  (Docs. 28, 29.)  On March 4, 2024, Plaintiff filed a motion to amend the complaint accompanied by a proposed amended pleading. (Doc. 30.)  The court granted the motion, filed the proposed amended complaint, and denied the pending motion to dismiss as moot.  (Docs. 32, 33.)

On June 20, 2024, Defendants filed a motion to dismiss the second amended complaint and a brief in support.  (Docs. 35, 36.)  On December 26, 2024, the court received and docketed Plaintiff's brief in opposition.  (Doc. 49.)  Accompanying the brief in opposition is Plaintiff's motion to accept the late brief.  (Doc. 50.)  The court will grant Plaintiff's motion to accept the late brief and address the pending motion to dismiss.

## A. Summary of Second Amended Complaint

The second amended complaint names five defendants: (1) Bernadette Mason ("Mason"), Facility Manager Superintendent at SCI-Mahanoy; (2) Dr. Laurel R. Harry ("Harry"), current Secretary of the Pennsylvania Department of Corrections ("DOC"); (3) Michael Wenerowicz ("Wenerowicz"), Regional Deputy Secretary of the DOC; (4) Tammy Ferguson ("Ferguson"), Executive Deputy Secretary of the DOC; and (5) Ulli Klemm ("Klemm"), Religious Administrator for the DOC.  (Doc. 33, p. 2.)[1]  All claims were brought against Defendants in their official capacity for prospective, declarative, and injunctive relief.  (*Id*., p. 2.)

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

Plaintiff alleges that he converted to Islam in 2003 and sincerely believes the commands and laws of his faith.  (*Id.*, p. 3.)  Plaintiff then brings eleven different counts under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") as follows.

### 1.  Scented Oils[2]

Plaintiff alleges that using scented oils and perfumes every day until the oil shines on his head and beard is a sunnah (tradition or practice) of Prophet Muhammad and required for proper prayer.  (Doc. 33, pp. 5, 7.)  Plaintiff quotes the Sahih Bukhari as requiring the use of oil or perfume on Fridays.  (*Id.*, p. 7.) Plaintiff alleges that Defendant Harry enforces a state-wide policy that prohibits all inmates form purchasing or possessing scented oils and perfumes for "unexplained security reasons."  (*Id.*, p. 5.)  Plaintiff acknowledges that he is provided scented oils once a week on Fridays for Jumj'ah services.  (*Id.*)  Plaintiff alleges that on July 8, 2019, he submitted a religious accommodation request form to purchase one ounce of non-alcoholic oil each month.  (*Id.*)  On September 16, 2019, Defendant Wenerowicz denied Plaintiff's request based on "an exaggerated safety and security concern."  (*Id.*, pp. 5–6.)  He stated that the DOC currently sells scented air fresheners, powered laundry detergent, after shave, shampoo,

---

[2] Plaintiff attempted to join this claim to his previously filed action in this court through a supplemental complaint, which was denied under Fed. R. Civ. P. 20.  *Nunez v. Wolf*, No. 3:15-1573, 2020 WL 670095, *7–8 (M.D. Pa. Nov. 13, 2020).

conditioners, moisturizers, Vaseline, and hair grease in the commissary. (*Id.*, p. 6.) Plaintiff alleges that Defendants Harry and Wenerowicz's state-wide policy ban on scented oils places a substantial burden on his religious exercise. (*Id.*, p.7.) He states that Defendant Harry has not considered a less restrictive means before prohibiting the purchase of scented oils, and the ban violates the RLUIPA. (*Id.*)

## 2. Razor and Tweezers[3]

Plaintiff further alleges that the practice of "fitra" is an ordained sunnah of the Prophet Muhammad and neglecting the practice is a sin. (*Id.*, p.8.) The practice of fitra includes trimming the mustache, sparing the beard, brushing the teeth, inhaling water, cutting the nails, washing the finger knuckles, plucking the armpit hair, shaving the pubic hair, washing the privates, and circumcision. (*Id.*) Plaintiff alleges that on March 4, 2015, while housed at SCI-Huntingdon, he submitted a religious accommodation request ("RAR") for an electric razor and his request was denied. (*Id.*)[4] Plaintiff submitted a second RAR in August of 2017 while housed at SCI-Somerset[5] and was denied a second time with a copy of that

---

[3] Plaintiff attempted to join his claim associated with the denial of tweezers to his previously filed action in this court through a supplemental complaint, which was denied under Fed. R. Civ. P. 20. *Nunez*, 2020 WL 670095, at *7–8.

[4] Plaintiff alleged these facts concerning the March 2015 denial of an electric razor in his amended complaint in his previously filed action in this case, and the court dismissed the claims associated with the March 2015 denial of an electric razor on November 13, 2020. *Nunez*, 2020 WL 670095, at *6.

[5] SCI-Somerset is located in Somerset County, which is in the Western District of Pennsylvania. 28 U.S.C. § 118.

denial being forwarded to the former Secretary of the DOC in July of 2018. (*Id.*, p. 9.) Plaintiff alleges that the use of a traditional razor causes him to inflict physical harm on himself. (*Id.*) Plaintiff alleges that on June 26, 2019, he submitted a RAR requesting to purchase and possess tweezers to pluck his armpit and pubic hair area to practice fitra, and his request was denied on August 4, 2019 without further explanation. (*Id.*, pp. 9–10.) Plaintiff alleges that Defendant Harry banned the inmate purchase of tweezers and that Defendants Harry and Wenerowicz, through DOC Policy DC-ADM 815, allow all inmates to keep no-longer-permitted items, including tweezers, as long as the items are noted in the inmate's personal property inventory form as of the policy effective date, May 13, 2008. (*Id.*, p. 10.) Plaintiff further alleges that when an inmate transfers to a new facility that does not permit an item previously approved at another facility, the inmate will be permitted to keep the item as long as it is on the inmate's personal property inventory form. (*Id.*) Plaintiff alleges that there are other inmates in the DOC who have electric razors and tweezers without a medical or religious reason. (*Id.*, p. 11.) Plaintiff asserts that Defendant Harry's DC-ADM 815 policy "is substantially underinclusive for the reasons noted above," and that Defendants Harry and Wenerowicz have not adequately justified the need for the policy. (*Id.*)

### 3. **Privacy Screen**[6]

Plaintiff alleges that Defendant Mason at SCI-Mahanoy prohibits any inmate from placing a privacy screen up to block another person's view of him in the cell while using the bathroom or getting dressed. (*Id.*, p. 12.) He alleges that he sincerely believes it is the sunnah of the Prophet Muhammad to hide himself while using the bathroom so no one can see him. (*Id.*) Specifically, he believes it is impermissible to expose his "awrah," the area from his navel to his knees, to anyone other than his spouse. (*Id.*) Plaintiff alleges that on July 11, 2019, he submitted a RAR requesting permission to put up a privacy screen for ten minutes when using the bathroom or dressing himself while in his cell. (*Id.*) Defendant Wenerowicz denied Plaintiff's request for safety and security reasons. (*Id.*, p. 12.) Plaintiff alleges that inmates at SCI-Huntingdon and SCI-Rockview are allowed to use privacy screens and are provided such screens for using the toilet and getting dressed. (*Id.*, p. 13.) Plaintiff alleges that on September 27, 2019, he submitted a PREA complaint stating that he was being compelled to expose his chest, buttocks, and genitals to other inmates because the exercise equipment was in front of his cell leading the other inmates and staff to commit acts of voyeurism against him. (*Id.*, p. 14.) Plaintiff also alleges that on December 12, 2022, he requested to wear

---

[6] Plaintiff attempted to join this claim to his previously filed action in this court through a supplemental complaint, which was denied under Fed. R. Civ. P. 20. *Nunez*, 2020 WL 670095, at *7–8.

a t-shirt to and from the shower so to avoid exposing his awrah to other men, and Chaplain Scott at SCI-Mahanoy denied the request stating it was a housing concern and not a religious concern.  (*Id*.)  Plaintiff alleges that Defendants Wenerowicz and Mason did not consider a less restrictive means to accommodate the exercise of his religion before implementing or enforcing the local rule banning privacy screens.  (*Id*.)

### 4.  Strip Search[7]

Plaintiff alleges that Defendants Harry and Wenerowicz maintain a DOC policy that inmates in general population are to be strip searched for contraband before and after every in-person contact visit.  (*Id*., p. 16.)  Plaintiff alleges that Defendant Mason maintains a local policy at SCI-Mahanoy that requires all inmates in general population to undergo a strip search before and after every non-contact visit including every virtual/video visit.  (*Id*.)  Plaintiff states that Defendant Harry knew of and consented to the local policy.  (*Id*.)  Plaintiff alleges that at SCI-Mahanoy he has been subjected to multiple strip searches after every in-person and non-contact visits and the strip searches violate his religious practice as they force him to expose his awrah to other men.  (*Id*.)  Plaintiff alleges that every SCI throughout the DOC, including SCI-Mahanoy, has body scanners that

---

[7] Plaintiff attempted to join this claim to his previously filed action in this court through a supplemental complaint, which was denied under Fed. R. Civ. P. 20.  *Nunez*, 2020 WL 670095, at *7–8.

each inmate is required to pass through in order to receive an in-person contact visit, that these scanners are used to detect contraband on or within an inmates' body, and that these scanners are regularly used in other county and state facilities across the nation. (*Id.*, pp. 17–18.) Plaintiff alleges that on June 27, 2019, he submitted a RAR, which was denied on "general hypothetical security concerns." (*Id.*, p. 18.) Plaintiff alleges that Defendants Harry, Wenerowicz, and Mason have not considered an alternative less restrictive than their strip-search policies after full body scanners were installed. (*Id.*)

### 5. Plaintiff's Brother

Plaintiff also alleges that maintaining a bond with family is a sunnah of the Prophet Muhammad. (*Id.*, p. 20.) Plaintiff further alleges that following a settlement agreement with the DOC, the DOC agreed to transfer his bother from SCI-Phoenix to SCI-Mahanoy. (*Id.*) Plaintiff states that after his brother arrived at the facility, Defendant Mason gave specific instructions to keep the brothers separated. (*Id.*) On June 13, 2022, Plaintiff submitted a RAR to SCH-Mahanoy's facility chaplain asserting that the separation between him and his brother was a substantial burden on his religious beliefs and practices. (*Id.* p. 21.) Plaintiff alleges that on April 3, 2023, he sent Defendant Mason a request slip to have his brother moved into his housing unit, but it was denied without a compelling reason. (*Id.*, pp. 21–22.) He further alleges that Defendant Mason has not

considered an alternative less restrictive means when denying his request to be housed with his brother.  (*Id.*, p. 22.)

### 6.  Eid Feasts

Plaintiff alleges that he is being prevented from celebrating the Eid holidays under the DOC's memo issued on February 24, 2022.  (*Id.*, p. 26.)  Plaintiff states that the DOC memo prevents Muslim inmates from purchasing food from outside vendors for any annual religious ceremonies and only allows "fellowship meals' to the inmate population for all religious ceremonies.  (*Id.*)  Defendants Harry and Klemm are now enforcing the new state-wide religious meal policy and this new policy is altering or forcing Plaintiff to eat non-halal food items and to change how he has been commanded to observe and practice the two annual Eid celebrations.  (*Id.*)  Plaintiff alleges that on May 17, 2022, he submitted a RAR requesting Defendants to allow him to preorder or be served halal meat for every annual Eid celebration.  (*Id.*, p. 27.)  Plaintiff alleges that on September 9, 2022, Defendant Klemm denied Plaintiff's request, stating that halal meets were already available on commissary, that bringing food from the meal back to the unit to share was denied for safety reasons, and inmates were limited to take one ration of fruit from the dining hall to be consumed the day it was issued.  (*Id.*)  He alleges that these new rules under the memo result in a substantial burden on the exercise of his religion.  (*Id.*, p. 28.)

### 7. Halal Diet

Plaintiff alleges that on October 24, 2017, he submitted a RAR requesting a halal diet consisting of halal meat, dairy based foods, fresh vegetables and fruits consistent with his sincere religious beliefs. (*Id*., p. 29.) He states that on June 24, 2020, he was notified that Defendants Klemm and Ferguson denied his RAR stating that the DOC currently offers three religious diets which meet his stated belief that his faith prevents him from eating non-halal meat, pork, and pork products. (*Id*.) Plaintiff alleges that the DOC only offers four meal options: standard, Kosher, alternative protein, and Nation of Islam. (*Id*.) Plaintiff states that there is no halal diet option. (*Id*.) He states that this places a substantial burden on his religious beliefs and practices. (*Id*., p. 31.) He alleges that Defendants Harry, Ferguson, and Klemm have failed to offer a compelling government interest as to why they cannot accommodate his halal diet. (*Id*.)

### 8. Violence Reduction Strategy

Plaintiff alleges that SCI-Mahanoy has a violence reduction strategy policy to deter violent behavior within the facility, and that this policy is enforced statewide by Defendants Harry and Mason. (*Id*., p. 33.) Plaintiff alleges that Defendants Harry and Mason permit administrative staff to impose restrictions for a 30-day period in the unit where the perpetrator of the violent act is housed. (*Id*.) Plaintiff alleges that these sanctions include a reduction of visits, phone calls,

commissary, yard time, and activity privileges. (*Id.*) Plaintiff alleges that his visits and phone calls can be cancelled abruptly in the event of a violent incident. (*Id.*, p. 35.) Plaintiff alleges that his policy places a substantial burden on his religious exercise because it limits his ability to interact with his friends and family. (*Id.*, p. 33.) Plaintiff alleges that on February 17, 2022, he submitted a RAR requesting Defendants to enter into a contract with Globel-Tel-Link to expand its app services to his tablet to allow incoming video messaging, in-cell video visits, and wireless out-going phone services. (*Id.*, pp. 33–34.) On February 22, 2022, Chaplain Scott denied the request stating that it was not a religious issue, but a security issue. (*Id.*, p. 35.) Plaintiff alleges that Defendants Harry and Mason had not considered an alternative less restrictive option prior to implementing or enforcing the violence reduction policy. (*Id.*, p. 36.) Plaintiff further alleges that there are companies that sell prison friendly tablets to county and state facilities across the country that allow inmates to make outgoing phone calls to family and friends. (*Id.*)

### 9. Video Messages

Plaintiff alleges that Defendant Harry, as the official policy maker of the DOC, permits inmates to purchase and possess a tablet with services limited to music downloads, emails, games, and ebooks. (*Id.*, p. 38.) Plaintiff alleges that Defendant Harry knows that these tablets are capable of sending and receiving video messages but has not approved the DOC to expand its contracted services to

allow inmates to use the tablets to send and receive video messages. (*Id*., p. 39.) Plaintiff alleges that the failure to expand the tablet services is a substantial burden on the practice of his religion, which requires him to share his religious knowledge and counsel his friends and family on religious matters and life affairs. (*Id*., pp. 39–40.) Plaintiff alleges that on July 17, 2019, he submitted a RAR requesting to send and receive video messages with his tablet and Chaplain Larry Liggitt denied it for reasons unknown. (*Id*., p. 40.) Plaintiff resubmitted the RAR to Chaplin Scott twice in February and December of 2022, and Chaplin Scott denied the requests, characterizing the video messages as a security issue and not a religious issue. (*Id*.)

### 10. Video Visits

Plaintiff alleges that Defendant Harry has implemented a state-wide video visit policy that limits an inmate to only six video visits per month lasting only forty-five minutes in duration and only during the facility's video visiting hours. (*Id*., p. 41.) Plaintiff alleges that the DOC requires every inmate attend the pre-scheduled video visits in a confined room using "Zoom" services through a stationary kiosk TV monitor so that others can hear and see his video calls. (*Id*.) Plaintiff alleges that this policy is a substantial burden on the practice of his religion because he is required to share his religious knowledge and counsel his friends and family and to engage intimate conversations with his spouse. (*Id*., pp.

12

42–43.)  Plaintiff alleges that on February 17, 2022, he submitted a RAR

requesting video visits on his tablet, and it was denied by Chaplain Scott on

February 22, 2022, because it was a security issue and not a religious issue.  (*Id*., p.

42.)

### 11. Cell Phones[8]

Next, Plaintiff alleges that at SCI-Mahanoy, there are eight inmate

telephones on each pod, and his pod accommodates 128 inmates.  (*Id*., p. 44.)

Additionally, the phones throughout the DOC are designed to only allow inmates

to make out-going phone calls to family and friends that have been pre-approved

by the DOC prison officials.  (*Id*.)  The DOC monitors and controls the use of

inmate telephones, and phone time must be purchased from the commissary or paid

for by pre-paid collect account with the DOC's contract phone provider.  (*Id*.)  The

DOC requires inmates to sign up for phone time and are limited to one fifteen-

minute phone slot per shift per day.  (*Id*.)  Once the fifteen-minute calling block

expires, the inmate cannot make an additional phone call for a period of thirty-

minutes.  (*Id*., p. 45.)  Plaintiff alleges that longer calling blocks are allowed at the

discretion of Defendants Harry and Mason and additional calling blocks may be

given to an inmate by housing unit officers at their discretion.  (*Id*.)   Plaintiff

---

[8] Plaintiff attempted to join this claim to his previously filed action in this court through a
supplemental complaint, which was denied under Fed. R. Civ. P. 20.  *Nunez*, 2020 WL 670095,
at *7–8.

alleges that Defendant Harry has left the local rules regarding inmate access to the telephone at the discretion of each facility manager. (*Id*.)

Plaintiff alleges that at SCI-Mahanoy he cannot use the inmate telephone to call his loved ones because the housing unit officers use their discretion and abuse their position of authority by granting additional calling blocks to favored inmates. (*Id*.) An inmate who uses the telephone without permission can be issued a disciplinary sanction of up to ninety days in solitary confinement or have his phone privileges suspended. (*Id*.)

Plaintiff alleges that Defendant Mason has limited him to a maximum of three fifteen-minute phone calls per day and there is a thirty-minute block period between phone calls. (*Id*., p. 46.) Plaintiff alleges that the restricted access to the telephone to make outgoing calls constitutes a substantial burden to the practice of his religion. (*Id*.) On June 7, 2019, Plaintiff submitted a RAR form requesting a "CellMate Phone" to talk and text with his loved ones at his own expense. (*Id*.) Plaintiff alleges that "CellMate Phones" are being sold at the Union County Jail in South Carolina. (*Id*., p. 47.) Defendant Wenerowicz denied the RAR on August 4, 2019, stating that there was a security concern and said that inmates could provide emotional support to their family using the mail, email, and the inmate telephones. (*Id*.) Plaintiff alleges that emails take twenty-four to seventy-two hours to be sent through the DOC's tablet provider and cost fifty cents per message. (*Id*., p. 48.)

14

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the majority of the alleged acts and omissions giving rise to the claims occurred at the SCI-Mahanoy in Schuylkill County, Pennsylvania and SCI-Huntingdon in Cumberland County, Pennsylvania which are located within this district. *See* 28 U.S.C. § 118(b).

The court acknowledges that as part of his claim associated with his request for an electric razor and tweezers, one of the three requests he made was at SCI-Somerset, which is located in the Western District of Pennsylvania. *See* 28 U.S.C. § 118(c). However, since two of the three denials on that claim took place in the Middle District of Pennsylvania, the court will also address the claim as to the denial at SCI-Somerset. *See* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.").

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other*

*grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must

"accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief." *Phillips v. County of*

*Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings,*

*Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts

contained in the complaint, the court may also consider "exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents"
attached to a defendant's motion to dismiss if the plaintiff's claims are based upon
these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing
*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196
(3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and
held to a less stringent standard than formal pleadings drafted by attorneys. *See
Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193
(3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be
granted leave to file a curative amended complaint even when a plaintiff does not
seek leave to amend, unless such an amendment would be inequitable or futile.
*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.
2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which
affirmatively demonstrate that the plaintiff has no right to recover is properly
dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d
103, 106 (3d Cir. 2002).

## DISCUSSION

Defendants seek to have all claims dismissed except for claims relating to
the Eid feasts under count six. (Doc. 36.) Therefore, the court will now address
the pending motion to dismiss except as to the claims raised under count six.

### A. All Claims, Except Count Six, Against Defendant Harry Will Be Dismissed.

Defendants allege that all claims against Defendant Harry should be dismissed for lack of personal involvement except for the claim associated with Eid feasts (count six).  (Doc. 36, pp. 16–17.)  Defendants argue Defendant Harry is the Secretary of the DOC, and all claims against him are premised on his position as a supervisor.  Defendants further argue that all the allegations raised against Defendant Harry, except count six, are premised on Defendant Harry's mere enforcement of policies and not on the creation of the policies.  (Doc. 36, pp. 16–18.)  Plaintiff concedes this argument and states that "Defendant Harry should be dismissed from all counts, except for Count 6."  (Doc. 49, p. 2.)  Therefore, the court will dismiss all claims against Defendant Harry without prejudice except for count six.

### B. All Claims Against Defendant Mason and Claims Associated with Count 5 Will Be Dismissed.

On October 31, 2024, the court received and docketed Plaintiff's notice to voluntarily dismiss all claims against Defendant Mason and all claims under count 5.  (Doc. 46.)  Federal Rule of Civil Procedure 41(a)(1) allows a plaintiff to dismiss an action by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment.  Defendants have not yet filed an answer in this case.  Therefore, the court will enter an order finding that all

claims against Defendant Mason will be dismissed without prejudice. As

Defendant Mason is the sole Defendant named in count five, the court will enter an

order dismissing count 5 without prejudice as well.

### C. Plaintiff Has Consented to Dismissal of Counts 8, 9, and 10.

The only Defendants named in counts 8, 9, and 10 are Defendants Harry and

Mason. (Doc. 33, pp. 33–43.)[9] As set forth above, Plaintiff has conceded the

dismissal of all claims against Defendant Harry and provided notice to the court

that all claims against Defendant Mason should be dismissed. Therefore, the court

will dismiss claims associated with counts 8, 9, and 10 without prejudice.

### D. Failure to State a RLUIPA Claim

Defendants argue that all the remaining claims, except count six, should be

dismissed because Plaintiff does not establish that his religious practices are being

substantially burdened or because the restrictions Plaintiff challenges are grounded

in a compelling government interest. (Doc. 36.)

RLUIPA provides, in pertinent part, that "[n]o government shall impose a

substantial burden on the religious exercise of a person residing in or confined to

an institution" unless the government demonstrates that the burden furthers "a

compelling governmental interest" and "is the least restrictive means" of doing so.

42 U.S.C. § 2000cc-1(a). In RLUIPA, "Congress defined 'religious exercise'

---

[9] The court finds that a reference to a Defendant "Harris" is scrivener's error and Plaintiff intended to name Defendant Harry. (Doc. 33, p. 36.)

capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting § 2000cc–5(7)(A)). And "Congress mandated that this concept 'shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Id.* (quoting § 2000cc–3(g)). Further, "RLUIPA 'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.'" *Id.* (quoting § 2000cc–3(c)).

Under RLUIPA, the prisoner bears the initial burden of showing that the prison's policy or practice substantially burdens the practice of his sincerely held religious beliefs. *Holt*, 574 U.S. at 360–61. "For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) (footnote omitted). If the prisoner establishes a prima facie case, the burden shifts to the defendant to show that the policy or practice was the least restrictive means of furthering a compelling governmental interest. *Holt*, 574 U.S. at 362; 42 U.S.C.A. § 2000cc-2 ("If a

plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.").

### 1. Scented Oils

Defendants argue that Plaintiff has not pled that the restriction of scented oils constitutes a substantial burden on his religious practices. (Doc. 36, pp. 19–20.) Specifically, Defendants point to the quoted material from the Sahih Bukhari as requiring the use of oil or perfume on Fridays and the fact that Plaintiff is provided scented oils on Fridays in preparation for prayers as evidence that the limitation on scented oils does not substantially burden his religious practices. (*Id*.) However, Defendants' argument overlooks Plaintiff's allegations that the use of scented oils is a daily requirement and a requirement of intimacy with his spouse. (Doc. 33, p. 5.) Therefore, based solely on the Plaintiff's second amended complaint, he has sufficiently pled facts to survive the Rule 12(b) motion as to this claim against Defendant Wenerowicz. In allowing this claim to proceed, the court makes no determination as to the merits of Plaintiff's claim, whether the government has a compelling government interest, or whether the government's

policy is the least restrictive means of furthering that compelling government interest.

### 2. Tweezers and Razors

The court has already addressed the issue of Plaintiff's claims for an electric razor and the DOC policy under the RLUIPA. *Nunez*, 2020 WL 670095, at *6. In that decision, this court granted the requested Rule 12(b) dismissal because Plaintiff's allegations did not meet the substantial burden requirement:

> Mr. Nunez's sincerely held religious beliefs require him to shave various portions of his body every three days. (ECF No. 34 at ¶ 79.) He does not contend the Defendants prohibit him from doing this. Rather, he states the standard razors sold in commissary cause "his genital area to break out in a skin rash and leaves him ingrown hairs that is both painful and sensitive to the touch." (*Id.* at ¶ 80.) He claims he must abandon his sacred religious practice of fitra because Defendant Bickell denied his RAR request for an electric razor. (*Id.* at ¶ 81 – 83.) He concedes that the Defendants permit inmates to purchase electric razors for medical, but not religious, reasons. (*Id.* at ¶ 82 and Exhs. 1 - 2.) Mr. Nunez's allegation fails to establish prima facie showing of a substantial burden upon his ability to practice his religion based on Defendants' denial of an electric razor.[] Accordingly, the Defendants' motion to dismiss as to this claim will be granted.

*Id.* Plaintiff's alleged facts surrounding the denial of the electric razor and tweezers in this action are substantially similar to those alleged in the 2015 complaint, and, in the case of the 2015 denial, identical. Therefore, the court will grant Defendants' motion to dismiss the claims associated with the denial of tweezers and an electric razor with prejudice as Plaintiff's allegations do not meet the substantial burden requirement.

### 3. Privacy Screen

Defendants argue that Plaintiff's allegations concerning the denial of privacy screens do not meet the substantial burden requirement by citing cases from the Third Circuit Court of Appeals and Western District of Pennsylvania District Court finding that security trumps privacy in prison. (Doc. 36, p. 21.) First, those cases do not address the RLUIPA, but instead involve constitutional claims. *Doe v. Delie*, 257 F.3d 309 (3rd Cir. 2001); *Johnson v. PA Bureau of Corrections*, 661 F.Supp. 425, 433 (W.D. Pa. 1987). The RLUIPA is considered a broader protection than the First Amendment. *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 117 (3d Cir. 2017) ("RLUIPA is broader than the First Amendment.").

Furthermore, these cases speak to the conclusion that security trumps privacy in prisons, which is associated with the burden placed on the government under the RLUIPA. At this procedural stage, the court is tasked with determining whether Plaintiff has pleaded sufficient factual details to support a RLUIPA claim, not whether the government has upheld its burden of demonstrating that the policy or practice was the least restrictive means of furthering a compelling governmental interest. Considering the alleged facts that Plaintiff's religious beliefs preclude others from viewing a specific portion of his body, that the conditions of his confinement result in him exposing this area to others, and that his requests for a

privacy screen have been denied, the court finds that Plaintiff has met the prima facie standard for a RLUIPA claim. Therefore, the court will deny the motion to dismiss as to this claim. In doing so, the court makes no determination as to the merits of Plaintiff's claim, whether the government has a compelling government interest, or whether the government's policy is the least restrictive means of furthering that compelling government interest.

### 4. Strip Searches

Defendants argue that Plaintiff's RLUIPA claim associated with the required strip searches before and after all visits (both contact and non-contact) should be dismissed based on common sense because the security of the facility is a compelling governmental interest. (Doc. 36, pp. 24–25.) Again, at this stage in litigation, the court is tasked with determining whether Plaintiff has pled sufficient factual details to support a RLUIPA claim, not whether the government has upheld its burden of demonstrating that the policy or practice was the least restrictive means of furthering a compelling governmental interest. Therefore, considering only the facts alleged by Plaintiff, the court finds that he has pleaded sufficient facts to survive the Rule 12(b) motion. In doing so, the court makes no determination as to the merits of Plaintiff's claim, whether the government has a compelling government interest, or whether the government's policy is the least restrictive means of furthering that compelling government interest.

24

### 5. Halal Diet

Defendants allege that the Third Circuit has consistently held that the food offerings of the DOC meet the halal standards, but to not provide halal meats does not violate the First Amendment, and cites to a recent Sixth Circuit case finding that the lack of a halal diet option in prison did not substantially burden the religious practices where the inmate was provided with a vegan meal as an alternative under the RLUIPA. (Doc. 36, p. 27.)

Here, Plaintiff alleges that he believes that as a Muslim, he can only eat meat in which the name of Allah was pronounced at its time of slaughter. (Doc. 33, p. 29.) He further alleges that "it is harm for him to eat meat that is not halal." (*Id.*, p. 30.) He states that the DOC offers four meal plans: (1) the standard meals; (2) Kosher diet; (3) alternative protein meals; and (4) Nation of Islam diets. (*Id.*) Defendants argue that there is a sufficient diet option that does not require him to eat non-halal meats, through the alterative protein meals. As such, the court finds that Plaintiff has failed to allege facts to support a RLUIPA claim. *See Davis v. Heyns*, 17-1268, 2017 WL 8231366, at *3 (6th Cir. Oct. 16, 2017). The court will dismiss the claims associated with the denial of halal diet with prejudice.

### 6. Cell Phones

Defendants allege that Plaintiff's second amended complaint does not meet the substantial burden standard as to the denial of Plaintiff's request for a cell phone to use in his cell. (Doc. 36, pp. 22–23.) The court agrees.

Plaintiff admits that he has access to phones and video calls while incarcerated. (Doc. 33.) Additionally, he has the use of mail and email. (*Id*.) He does not allege that he is precluded form calling or otherwise contacting his family and friends while incarcerated. Instead, he simply argues that he would prefer the use of a personal cell phone. This is insufficient to constitute a substantial burden. Therefore, the claim associated with the denial of the request for a cell phone is dismissed with prejudice.

### CONCLUSION

For the above-stated reasons, the court will grant in part Defendants' motion to dismiss the second amended complaint. The court will dismiss all claims against Defendants Harry (except count six) and Mason. In doing so, the court dismisses all claims associated with counts five, eight, nine, and ten. The court will also dismiss all claims associated with counts two, seven, and eleven against the remaining Defendants. The surviving claims are those brought under the RLUIPA against Defendant Wenerowicz in counts one, three, and four and against Defendants Harry and Klemm in count six.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 24, 2025