## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO NUNEZ, JR., | : | Civil No. 1:23-CV-01171 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. LAUREL R. HARRY, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion for reconsideration of the court's March 24, 2025 order filed by Fernando Nunez, Jr. ("Plaintiff"). (Doc. 58.) Also pending is Defendants' motion seeking an extension of the deadlines in the current case management order. (Doc. 59.) The court will deny both motions.

### PROCEDURAL HISTORY AND BACKGROUND

Plaintiff initiated this action by filing a complaint and a motion to proceed *in forma pauperis* in July of 2023. (Docs. 1, 3.) On August 16, 2024, the court granted Plaintiff *in forma pauperis* status and ordered the complaint to be served on the named defendants. (Doc. 12.) Defendants filed a motion to dismiss on November 30, 2023. (Doc. 19.) On February 20, 2024, Plaintiff filed an amended complaint, and the court promptly struck it from the record due to it being filed without leave of the court. (Docs. 28, 29.) On March 4, 2024, Plaintiff filed a motion to amend the complaint accompanied by a proposed amended pleading.

(Doc. 30.)  The court granted the motion, filed the proposed amended complaint, and denied the pending motion to dismiss as moot.  (Docs. 32, 33.)

On June 20, 2024, Defendants filed a motion to dismiss the amended complaint and a brief in support.  (Docs. 35, 36.)  On December 26, 2024, the court received and docketed Plaintiff's brief in opposition.  (Doc. 49.)  On March 25, 2025, the court entered a memorandum and order granting the motion to dismiss in part.  (Docs. 52, 53.)  Specifically, the court dismissed all claims against Defendant Harry except those raised in count six, all claims against Defendant Mason, all claims associated with counts five, eight, nine, and ten without prejudice and dismissed all claims associated with counts two, seven, and elven with prejudice. (Doc. 53.)  The surviving claims include the Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims against Defendant Wenerowicz in counts one, three, and four, and the RLUIPA claims raised against Defendants Harry and Klemm in count six.  (*Id.*)

On April 10, 2025, the court received and docketed Plaintiff's motion for reconsideration of the court's March 24, 2025 memorandum and order.  (Doc. 54.) However, Plaintiff did not timely file a brief in support his motion.

On April 24, 2025, Defendants filed an answer to the surviving claims in the amended complaint.  (Doc. 55.)

On April 29, 2025, the court entered two orders.  The first order deemed Plaintiff's unsupported motion for reconsideration as withdrawn.  (Doc. 56.)  The second was a case management order setting forth deadlines for the automatic discovery disclosures, fact discovery completion, and filing dispositive motions.  (Doc. 57.)  Almost four months passed with no filings from either party.

On August 18, 2025, the court received and docketed Plaintiff's motion for reconsideration of the court's March 24, 2025 memorandum and order with a brief in support attached.  (Doc. 58.)

On September 2, 2025, Defendants filed a motion seeking an extension of the deadlines set forth in the case management order.  (Doc. 59.)

The court will now address the pending and properly supported motion for reconsideration and the motion for an extension of the case management deadlines.

## DISCUSSION

### A. Standard for Reconsideration

Plaintiff brought his motion for reconsideration under Fed. R. Civ. P. 60(b).  (Doc. 58.)  However, because Plaintiff's motion seeks reconsideration of an interlocutory order partially dismissing the amended complaint, it should be brought pursuant to Fed. R. Civ. P. 54(b).  *See Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial

summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b).").  Under Rule 54(b), an order that does not dispose of every claim in an action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b); *see Qazizadeh*, 214 F. Supp. 3d at 295.  Reconsideration of interlocutory orders "may be had even if a movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issues the underlying order, or 'the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Qazizadeh*, 214 F. Supp. 3d at 295 (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  "Instead, the court may permit reconsideration whenever 'consonant with justice to do so.'"  *Id.* (quoting *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 412 F. Supp. 2d 630, 632 (M.D. Pa. 2007)).  Nevertheless, the following limitations apply to such motions:

> Before entertaining a motion for reconsideration of an interlocutory order, the movant must still establish good cause for why the court should revisit its prior decision.  Moreover, whether involving a final or interlocutory order, a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.  A reconsideration motion should not be used to try to get a second bite at the apple or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question.

*Qazizadeh*, 214 F. Supp. 3d at 295–96 (citations and internal quotation marks omitted).

## B. Plaintiff's Motion for Reconsideration Will Be Denied.

Here, Plaintiff's motion for reconsideration is a clear example of Plaintiff trying to get a second bite at the apple. Plaintiff argues that the court erred in concluding that he failed to show that Defendants' policies at issue in counts two, seven, and eleven did not substantially burden his religious practices under the RLUIPA. (Doc. 58.) Specifically, Plaintiff alleges that the court failed to consider his request for tweezers separate from his request for an electric razor, that the court failed to consider other Circuit opinions finding that the lack of halal diet imposed a substantial burden[1], and that he disagrees with the court's conclusion the denial of a tablet for video calls is not a substantial burden. (*Id*.)

### 1. Tweezers

In the amended complaint, Plaintiff alleged that the practice of "fitra" is an ordained sunnah of the Prophet Muhammad and neglecting the practice is a sin. (Doc. 33, p.8.) The practice of fitra includes trimming the mustache, sparing the

---

[1] The RLUIPA provides, in pertinent part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government demonstrates that the burden furthers "a compelling governmental interest" and "is the least restrictive means" of doing so. 42 U.S.C. § 2000cc-1(a). "For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) (footnote omitted).

beard, brushing the teeth, inhaling water, cutting the nails, washing the finger knuckles, plucking the armpit hair, shaving the pubic hair, washing the privates, and circumcision. (*Id*.) Plaintiff alleged that on March 4, 2015, while housed at SCI-Huntingdon, he submitted a religious accommodation request ("RAR") for an electric razor and his request was denied. (*Id*.) Plaintiff submitted a second RAR in August of 2017 while housed at SCI-Somerset and was denied a second time with a copy of that denial being forwarded to the former Secretary of the DOC in July of 2018. (*Id*., p. 9.)[2] Plaintiff alleged that the use of a traditional razor causes him to inflict physical harm on himself. (*Id*.) Plaintiff alleged that on June 26, 2019, he submitted a RAR requesting to purchase and possess tweezers to pluck his armpit and pubic hair area to practice fitra, and his request was denied on August 4, 2019 without further explanation. (*Id*., pp. 9–10.) Plaintiff alleged that Defendant Harry banned the inmate purchase of tweezers and that Defendants Harry and Wenerowicz, through DOC Policy DC-ADM 815, allow all inmates to keep no-longer-permitted items, including tweezers, as long as the items are noted in the inmate's personal property inventory form as of the policy effective date, May 13, 2008. (*Id*., p. 10.) Plaintiff further alleged that when an inmate transfers to a new facility that does not permit an item previously approved at another facility, the inmate will be permitted to keep the item as long as it is on the

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

inmate's personal property inventory form. (*Id.*) Plaintiff alleged that there are other inmates in the DOC who have electric razors and tweezers without a medical or religious reason. (*Id.*, p. 11.) Plaintiff asserted that Defendant Harry's DC-ADM 815 policy "is substantially underinclusive for the reasons noted above," and that Defendants Harry and Wenerowicz have not adequately justified the need for the policy. (*Id.*)

In the March 24, 2025 order, the court found that it had already addressed the issue of an electric razor and the DOC policy under the RLUIPA in a previous case filed by Plaintiff. (Doc. 52, p. 22 *citing Nunez v. Wolf*, No. 3:15-1573, 2020 WL 6700956, at *6 (M.D. Pa. Nov. 13, 2020)). The court cited the following rationale for the denial of the electric razor from the 2020 action:

> Mr. Nunez's sincerely held religious beliefs require him to shave various portions of his body every three days. (ECF No. 34 at ¶ 79.) He does not contend the Defendants prohibit him from doing this. Rather, he states the standard razors sold in commissary cause "his genital area to break out in a skin rash and leaves him ingrown hairs that is both painful and sensitive to the touch." (*Id.* at ¶ 80.) He claims he must abandon his sacred religious practice of fitra because Defendant Bickell denied his RAR request for an electric razor. (*Id.* at ¶ 81 – 83.) He concedes that the Defendants permit inmates to purchase electric razors for medical, but not religious, reasons. (*Id.* at ¶ 82 and Exhs. 1 - 2.) Mr. Nunez's allegation fails to establish prima facie showing of a substantial burden upon his ability to practice his religion based on Defendants' denial of an electric razor.[] Accordingly, the Defendants' motion to dismiss as to this claim will be granted.

*Nunez*, 2020 WL 6700956, at *6. The court then determined that the alleged facts surrounding the denial of the electric razor and the tweezers in the above captioned

action were substantially similar to those alleged in the 2015 complaint, and in the case of the 2015 denial, the alleged facts were identical. (Doc. 52, p. 22.) The court then dismissed the claims with prejudice finding that the allegations in the amended complaint did not meet the substantial burden requirement. (*Id.*)

In his motion for reconsideration, Plaintiff alleges that the court committed an error of facts because the 2015 denial did not discuss tweezers, only electric razors. (Doc. 52, p. 8.) He also alleges that the court overlooked the following allegation that was not present in the 2020 case determination: "As a Muslim, Nunez sincerely believes inflicting physical harm and pain upon himself is a manifest sin because Prophet Muhammad said in an authentic Hadith: 'No harm may be inflicted on oneself or others.'" (*Id.*)

Plaintiff alleges that using a disposable razor results in skin irritations, i.e. a medical condition. (Doc. 33, p. 9.) He further alleges that exceptions to the DOC policy can be made for medical reasons. (*Id.*) He then concludes that the DOC policy creates a substantial burden on the practice of his religion. (*Id.*, p. 11.)[3] As reproduced above, this is similar to the allegations he made in 2015, and the court will not disturb its prior determination that he has failed to properly allege that the

---

[3] Plaintiff does not allege that the individual defendants violated the RLUIPA by denying his requests, but specifically alleges that the DOC policy itself violates the RLUIPA.

DOC policy creates a substantial burden on the practice of his religion.  The court will deny this motion for reconsideration.

### 2.  Halal Diet

In the amended complaint, Plaintiff alleged that on October 24, 2017, he submitted a RAR requesting a halal diet consisting of halal meat, dairy based foods, fresh vegetables and fruits consistent with his sincere religious beliefs.  (*Id.*, p. 29.)  He stated that on June 24, 2020, he was notified that Defendants Klemm and Ferguson denied his RAR stating that the DOC currently offers three religious diets which meet his stated belief that his faith prevents him from eating non-halal meat, pork, and pork products.  (*Id.*)  Plaintiff alleged that the DOC only offers four meal options: standard, Kosher, alternative protein, and Nation of Islam.  (*Id.*)  Plaintiff states that there is no halal diet option.  (*Id.*)  He stated that this places a substantial burden on his religious beliefs and practices.  (*Id.*, p. 31.)  He alleged that Defendants Harry, Ferguson, and Klemm have failed to offer a compelling government interest as to why they cannot accommodate his halal diet.  (*Id.*)

The court determined that Plaintiff failed to allege facts that support a RLUIPA claim.  (Doc. 52, p. 25 citing *Davis v. Heyns*, 17-1268, 2017 WL 8231366, at *3 (6th Cir. Oct. 16, 2017)).  The court then dismissed the claims associated with the lack of a halal diet option with prejudice.  (Doc. 52, p. 25.)

In his motion for reconsideration, Plaintiff argues that the court overlooked caselaw from the Seventh Circuit, the Fourth Circuit, and the District Court for the District of New Jersey. (Doc. 58, p. 10.) These decisions are not binding on this court. Plaintiff may disagree with the court's decision, but he cited these cases in his brief in support[4] and the court found them unconvincing. A motion for reconsideration does not grant Plaintiff a second bite at the apple. Therefore, his motion to dismiss will be denied.

### 3. Tablet

In his amended complaint under Count 11, Plaintiff alleged that at SCI-Mahanoy, there are eight inmate telephones on each pod, and his pod accommodates 128 inmates. (Doc. 33, p. 44.) Additionally, the phones throughout the DOC are designed to only allow inmates to make out-going phone calls to family and friends that have been pre-approved by the DOC prison officials. (*Id*.) The DOC monitors and controls the use of inmate telephones, and phone time must be purchased from the commissary or paid for by pre-paid collect account with the DOC's contract phone provider. (*Id*.) The DOC requires inmates to sign up for phone time and are limited to one fifteen-minute phone slot per shift per day. (*Id*.) Once the fifteen-minute calling block expires, the inmate cannot make an additional phone call for a period of thirty-minutes. (*Id*., p. 45.) Plaintiff alleged

---

[4] (Doc. 49, p. 15.)

that longer calling blocks are allowed at the discretion of Defendants Harry and Mason and additional calling blocks may be given to an inmate by housing unit officers at their discretion. (*Id*.) Plaintiff alleges that Defendant Harry has left the local rules regarding inmate access to the telephone to the discretion of each facility manager. (*Id*.)

Plaintiff alleged that at SCI-Mahanoy he cannot use the inmate telephone to call his loved ones because the housing unit officers use their discretion and abuse their position of authority by granting additional calling blocks to favored inmates. (*Id*.) An inmate who uses the telephone without permission can be issued a disciplinary sanction of up to ninety days in solitary confinement or have his phone privileges suspended. (*Id*.)

Plaintiff alleged that Defendant Mason has limited him to a maximum of three fifteen-minute phone calls per day and there is a thirty-minute block period between phone calls. (*Id*., p. 46.) Plaintiff alleged that the restricted access to the telephone to make outgoing calls constitutes a substantial burden to the practice of his religion. (*Id*.) On June 7, 2019, Plaintiff submitted a RAR form requesting a "CellMate Phone" to talk and text with his loved ones at his own expense. (*Id*.) Plaintiff alleges that "CellMate Phones" are being sold at the Union County Jail in South Carolina. (*Id*., p. 47.) Defendant Wenerowicz denied the RAR on August 4, 2019, stating that there was a security concern and said that inmates could provide

emotional support to their family using the mail, email, and the inmate telephones. (*Id.*)  Plaintiff alleged that emails take twenty-four to seventy-two hours to be sent through the DOC's tablet provider and cost fifty cents per message.  (*Id.*, p. 48.)

The court found that Plaintiff's amended complaint did not meet the substantial burden standard as to the denial of his request for a cell phone to use in his cell.  (Doc. 52, p. 26.)  Plaintiff admitted that he has access to phones and video calls while incarcerated.  (Doc. 33.)  Additionally, he stated that he has the use of mail and email.  (*Id.*)  He did not allege that he was precluded from calling or otherwise contacting his family and friends while incarcerated.  Instead, he argued that he would prefer the use of a personal cell phone.  The court found that this was insufficient to constitute a substantial burden and dismissed the claim with prejudice.  (Doc. 52, p. 26.)

In his motion for reconsideration, Plaintiff states that he disagrees with the court's decision and states that he is seeking a tablet with wireless phone capabilities.  (Doc. 58, p. 11.)  He argues that he met the substantial burden requirement by alleging that he is precluded from calling or otherwise contacting his family and friends while incarcerated during specific times and days when his facility is placed on lockdown.  (*Id.*)  Plaintiff's mere disagreement is not a sufficient reason to reconsider.  As this court already concluded, Defendants are not creating a substantial burden on Plaintiff's religion by not granting him

unfettered access to the outside world by his preferred method of communication. He has means to communicate with family and friends. This court will not entertain Plaintiff's attempt to take a second bite at the apple and will therefore deny Plaintiff's motion for reconsideration.

### C. Defendants' Motion For Extension Will Be Denied.

On April 29, 2025, the court entered a case management order requiring Defendants to produce the initial discovery material by May 26, 2025, setting a status conference for September 24, 2025, and setting a fact discovery deadline of October 31, 2025. (Doc. 57.) On August 18, 2025, Plaintiff filed the motion for reconsideration that the court addresses above. (Doc. 58.) On September 2, 2025, Defendants notified the court that they would not be responding to Plaintiff's motion for reconsideration and stating that they did not engage in any discovery because of this pending motion. (Doc. 59.) Defendants then requested that the court extend all the deadlines set for the court's case management order. (*Id.*)

This does not make sense. The motion for reconsideration was not filed until August 18, 2025. Defendants failed to meet the automatic disclosure of discovery deadline in May of 2025 and also elected not to engage in any discovery for over three months *prior to* the filing of the motion for reconsideration. Defendants' lapses do not give rise to good cause for an extension of the deadlines. It is also not obvious to the court that Plaintiff filing a motion for reconsideration

13

was a reason to halt discovery.  For these reasons, Defendant's motion will be denied.

Defendants will be ordered to produce the automatic discovery addressed in the case management order as soon as possible.[5]  The court will reschedule the status conference to October 2, 2025 at 11:30 a.m. because the facility at Houtzdale has reported a conflict.  At that time, the court will entertain additional requests for an extension of deadlines after Defendants have engaged in good faith efforts to complete discovery.

### CONCLUSION

For the above stated reasons, Plaintiff's motion for reconsideration will be denied and Defendants' motion for additional time to complete discovery will be denied at this time.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 5, 2025

---

[5] The court is aware of the potential for delays in the production of discovery in light of the cyberattack referenced in Standing Order No. 2025-05.

14